UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BONNIE S. O'CONNOR and
WILLIAM W. O'CONNOR,

       Plaintiffs,

v.                                         1:11-CV-00506 (BKS/CFH)

LOWE'S HOME CENTERS, INC.,
V.T.I., INC., DARE WOOD INDUSTRY
(JIANGXI) CO., LTD., and ANXI HENGHUI
TECHNOLOGY COMPANY LIMITED,

       Defendants.
_____

LOWE'S HOME CENTERS, INC.,
and V.T.I., INC.,

       Third-Party Plaintiffs,

v.

ROSEMARY O'CONNOR,

       Third-Party Defendant.[1]
_____

---

[1] The caption is based upon the April 11, 2013 Order amending the caption. (Dkt. No. 49). The Court has referred to the Third-Party Defendant, who was identified in the Third-Party Complaint as "Rosemary O'Connor," with the correct spelling of her name, "Rosemarie O'Connor." (Dkt. No. 66-8, p. 1).

**Appearances:**

For Plaintiffs Bonnie S. O'Connor and William W. O'Connor:

**Dennis A. First**
**Margaret E. Dunham**
O'Connor, O'Connor Law Firm - Albany Office
20 Corporate Woods Boulevard
Albany, NY 12211

For Defendants/Third-Party Plaintiffs Lowe's Home Centers, Inc. and V.T.I., Inc.:

**Brian D. Carr**
Carter, Conboy Law Firm
20 Corporate Woods Boulevard
Albany, NY 12211

**Javier F. Flores**
Manion, Gaynor Law Firm
21 Custom House Street
Boston, MA 02110

**Judith B. Aumand**
**Kevin P. Burke**
Burke, Scolamiero Law Firm
7 Washington Square
Albany, NY 12212

For Third-Party Defendant /Counterclaimant Rosemarie O'Connor:

**William C. Foster**
**David M. Cost**
Hiscock, Barclay Law Firm - Albany Office
80 State Street
Albany, NY 12207

**Hon. Brenda K. Sannes, United States District Court Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.     INTRODUCTION**

Plaintiffs Bonnie O'Connor and William O'Connor ("Plaintiffs") have brought this product liability diversity action against Lowe's Home Centers, Inc., V.T.I., Inc., Dare Wood Industry (Jiangxi) Co., Ltd.,[2] and Anxi Henghui Technology Company Limited,[3] alleging, *inter alia,* claims for product defect, failure to warn, negligence, and breach of warranty (the "underlying action"). (Dkt. No. 43). Plaintiffs allege that Bonnie O'Connor was seriously injured by a dangerous and defective three-tiered round stand (the "Stand") from the Lowe's Home Improvement Store in Saratoga Springs, New York, which was purchased and assembled by Bonnie O'Connor's sister-in-law Rosemarie O'Connor. (*Id.*). Lowe's Home Centers, Inc. and V.T.I., Inc. ("Defendants") have filed a Third-Party Complaint against Rosemarie O'Connor for common law indemnification and contribution alleging that the accident was caused solely by her negligence in assembling the Stand, or by some combination of her negligence and that of Plaintiffs in "assembling and/or handling" the Stand. (Dkt. No. 26, ¶¶ 13-15). In her answer to the Third-Party Complaint, Rosemarie O'Connor asserted a counterclaim for common law indemnification against the Defendants. (Dkt. No. 31, ¶¶ 46-50). Rosemarie O'Connor now seeks summary judgment, dismissing the Defendants' claims for indemnification and contribution, and granting judgment on her counterclaim for indemnification against Defendants. (Dkt. No. 66). For the reasons set forth below, her motion is granted in part and denied in part.

---

[2] Dare Wood Industry (Jiangxi) Co., Ltd. has not been served with the complaint in this action. According to Plaintiffs' letter of June 23, 2011, Dkt. No. 11, service was attempted in China pursuant to the Hague Convention, but Plaintiffs have not filed any proof of service.

[3] Anxi Henghui Technology Company Limited was served, Dkt. No. 74, but has not appeared in this action.

## II. FACTS[4]

### A. Purchase and Assembly of the Stand

On or about December 15, 2009, Rosemarie O'Connor purchased the Stand from a Lowe's Home Improvement Store in Saratoga Springs, New York. (O'Connor SMF, ¶ 7). The Stand has three tiers of round shelves set between four legs with a pagoda top and finial. (*Id.*). The Stand was manufactured overseas, and distributed by V.T.I., Inc. to Lowe's Home Centers, Inc. for sale at its Saratoga Springs store. (Defendants' Response and SMF, ¶ 3).[5] The Stand came packaged in a box with instructions for assembly. (O'Connor SMF, ¶¶ 8-9). The instructions provide the following warnings and cautions: "Do not climb on this stand," "Follow assembly steps exactly," and "When placing wood shelves, please follow the directions as illustrations shown below to ensure wood shelves will be set properly." (Instructions, Dkt. No. 66-6, p. 59). The instructions display a diagram of the assembled Stand and list the package contents; the purchaser is directed to "[c]ompare parts with package contents list and diagram above," before beginning assembly, and "[i]f any part is missing or damaged, do not attempt to

---

[4] The facts stated herein are drawn from the parties' submissions in connection with the instant motion, including Third-Party Defendant's L.R. 7.1(a)(3) Statement of Undisputed Material Facts ("O'Connor SMF"), Dkt. No. 66-8; Third-Party Plaintiffs' Response thereto and Statement of Additional Material Facts ("Defendants' Response and SMF"), Dkt. No. 83-2; Third-Party Defendant's Reply thereto ("Reply Facts"), Dkt. No. 83-2; the complete deposition of Rosemarie O'Connor ("Rosemarie O'Connor Dep."), Dkt. No. 78-2; the available excerpts of the deposition of Robert O'Connor ("Robert O'Connor Dep."), Dkt. Nos. 66-4, 82; and the Stand Assembly Instructions ("Instructions"), Dkt. No. 66-6. All citations to the parties' submissions reference the page numbers generated and marked by the ECF system.

Citations to a party's L.R. 7.1(a)(3) Statement incorporate by reference the documents cited therein. For convenience, Third-Party Defendant's supporting Memorandum of Law (Dkt. No. 66-9) will be referred to as "O'Connor. Br."; Third-Party Plaintiffs' opposing Memorandum (Dkt. No. 76) as "Defendants' Br."; and Third-Party Defendant's Reply (Dkt. No. 83) as "O'Connor Reply." Where facts stated in a party's L.R. 7.1(a)(3) Statement are supported by testimonial or documentary evidence, and denied with only a conclusory statement by the other party, the Court has found such facts to be true. *See* N.D.N.Y. L.R. 7.1(a)(3); F.R.C.P. 56(e).

[5] Rosemarie O'Connor states that the Stand was "manufactured by either Defendant Dare Wood Industries, Inc. or Anxi Hengui Technology Company Ltd." (O'Connor SMF, ¶ 3), but cites only to discovery responses by defendants that Anxi manufactured the Stand. Defendants state that "[u]pon information and belief, the Product was designed and manufactured by Anxi Henghui Technology Company, Ltd." (Defendants' Response and SMF, ¶ 3). While information and belief alone do not suffice to support a statement of fact for summary judgment, *see Patterson v. Cnty. Of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004), this fact is not material for purposes of the Court's decision.

assemble the product." (*Id*., pp. 57-59). The instructions also list a customer service telephone number for issues involving "[q]uestions, problems, missing parts." (*Id*., 57).

The instructions provide a number of illustrations of the assembly process, along with the following directions:

> 1. Open folding stand (A) to have 4 legs set on the floor [and] place bottom shelf (F) over the braces as it's shown in the right and fixed with wood screws (GG) firmly. 2. Place middle shelf (E) as illustrations show and fixed with wood screws (GG) firmly. 3. Place upper shelf (D) over the braces as it's shown in the right and fixed with wood screws (GG) firmly. 4. Align 4 prominent irons to the holes as shown In [sic] the illustrations then attach pagoda top (B) to the stand and screw finial (C) into the top to complete all assembly steps.

(*Id.*, pp. 59-61). Figure 4 of the of the instructions depicts the final step in the assembly process, with the pagoda top directly above and lined up with the posts of the frame, and down arrows drawn to indicate the direction for placement. (*Id*., p. 61). The instructions provide an estimated assembly time of 30 minutes and state that an included screwdriver is the only tool required. (*Id*., p. 59).

Rosemarie O'Connor assembled the Stand with assistance from her husband Robert O'Connor. (O'Connor SMF, ¶ 10). First, Ms. O'Connor read the instructions. (Rosemarie O'Connor Dep., p. 22). Then, Ms. O'Connor unfolded the stand and stood it on the floor. (*Id*., pp. 25-26). Next, Ms. O'Connor placed the shelves on the stand and affixed them with the included wood screws. (*Id*., p. 26). Finally, she asked her husband for help putting the pagoda on top of the Stand. (*Id*., pp. 32-33). Ms. O'Connor's husband was only involved in the final step of putting the pagoda on top of the frame to complete the Stand. (O'Connor SMF, ¶ 16). Mr. O'Connor described his assistance as "push[ing] the bars in so it lined up so she could slide it in." (Robert O'Connor Dep., pp. 63-64). Ms. O'Connor described his assistance as "to move the arms, in order for the prongs to fit in." (Rosemarie O'Connor Dep., pp. 31-32). Ms.

O'Connor testified that it took her husband "a little bit of strength" and "not a lot of effort" to put the pagoda on. (*Id*., p. 32). Mr. O'Connor described the force he used as a "little pressure" and stated "it didn't require a great deal of physical force." (Robert O'Connor Dep., Dkt. No. 82, p. 1). According to Ms. O'Connor, it "took probably five minutes" to put the pagoda on top. (Rosemarie O'Connor Dep., pp. 31-32). The instructions do not describe any amount of force to be used in order to align the frame supports and put on the pagoda top. (Instructions, pp. 59-61). There was no included fastener or other means by which to attach the pagoda top of the Stand to the frame so that the two parts did not separate. (O'Connor SMF, ¶¶ 12-13).

Ms. O'Connor alleges that she read the instructions and followed all the steps therein to properly assemble the Stand and did so without difficulty. (*Id*., ¶¶ 12-13; Reply Facts, ¶ 18). The Defendants deny that Ms. O'Connor properly followed the instructions. (Defendants' Response and SMF, ¶ 13). Defendants allege that Ms. O'Connor failed to "equally space the vertical posts of the stand and set the cross-members at approximately 90 degrees." (*Id.*). Defendants further allege that Ms. O'Connor improperly "solicited her husband's assistance in applying approximately forty pounds of force to bend the vertical posts of the Stand and force fit the pagoda onto it." (*Id*.).

### B. Bonnie O'Connor's Accident with the Stand

Rosemarie O'Connor gave the assembled Stand to her sister-in-law Bonnie O'Connor on December 25, 2009. (O'Connor SMF, ¶¶ 6, 22). At the time, Bonnie O'Connor saw the Stand as one piece and did not know that the pagoda top separated from the frame. (*Id*., ¶ 23). On January 6, 2010, Bonnie O'Connor attempted to move the Stand by grasping the pagoda top. (*Id*., ¶ 24). The pagoda top came off and struck Bonnie O'Connor in the eye, causing an injury. (*Id.*, ¶ 25). Defendants argue that by "force fitting" the pagoda top onto the Stand, Rosemarie

O'Connor "introduced pre-tension into the structure" which resulted in a "spring effect" when Bonnie O'Connor lifted it by the top, causing the pagoda to disengage with upward force and propel into her eye. (Defendants' Response and SMF, Additional Facts, at ¶ 13). Rosemarie O'Connor alleges that she followed the instructions for assembly, that she did not alter or modify the Stand, and that the accident would have occurred even if she assembled the Stand exactly how Defendants have indicated, since the pagoda top would still have freely separated from the frame. (O'Connor SMF, ¶¶ 13, 21, 29).

    C.    **Analyses of the Stand**

The parties have submitted a number of professional reports which purport to analyze the design and assembly of the Stand. Without deciding the admissibility of these opinions pursuant to Rule 702 of the Federal Rules of Evidence, the Court will summarize the reports in order to highlight issues that the trier of fact may need to consider regarding assembly of the Stand. Carol Pollack-Nelson, Ph.D., a Human Factors Psychologist hired by Plaintiffs, examined the Stand assembled by Rosemarie O'Connor and found that "the posts descending from the pagoda top do not line up with the hollow openings of the posts on the bottom shelving unit." (Pollack-Nelson Report, Dkt. No. 66-5, p. 3). Pollack-Nelson further observed that attaching the pagoda top "requires some muscle because [the pagoda top posts] must be pushed into the hollow opening with force since they are not aligned." (*Id.*, p. 4). Pollack-Nelson opined that: "[i]f the pagoda top had been attached to the stand—either by the manufacturer or as part of assembly instructions—Ms. Connor likely would not have suffered this injury." (*Id.*, p. 9).

Wilson G. Dobson, P.E, a Mechanical and Materials Engineering Consultant hired by Plaintiffs, similarly concluded that "the subject stand is defective in design for not having the top permanently attached to the base and for having it separate in a sudden and uncontrollable

5

fashion." (Dobson Report, Dkt No. 66-4, p. 72). In examining the Stand assembled by Rosemarie O'Connor, Dobson observed that "[t]he top piece and legs do not line up and some force must be exerted to bring the legs in alignment so the top stems can be inserted in the legs." (*Id.*). Dobson proposed a number of design solutions including permanently attaching the pagoda top and also to "[a]lign the top piece stems from the stand leg tube end openings so there is no interference, and thus no force other than gravity holding the top in place." (*Id.*).

Ronald B. Bucinell, Ph.D., P.E., a Mechanical Engineer hired by Rosemarie O'Connor, agreed that the Stand she assembled was misaligned, and opined that design of the Stand was defective in not having the top securely attached, and that "having to force the frame supports apart to complete the assembly was a condition that resulted from following the provided assembly instructions." (Bucinell Report, Dkt. No. 66-5, pp. 53-54). Bucinell concluded that nothing Ms. O'Connor did in assembling the Stand caused or contributed to the accident. (*Id.*).

Mark W. Steiner, Ph.D., a Professor of Mechanical Engineering hired by Defendants, also inspected the Stand assembled by Rosemarie O'Connor and found the frame supports[6] to be out of alignment with the pagoda top. (Steiner Report, Dkt. No. 66-5, p. 31). However, Steiner further observed that the "frame supports were not aligned at 90 degrees per instructions." (*Id.*, p. 31). Therefore, according to Steiner, "the frame posts needed to be forcibly deflected in order to align [the top to the frame]," which resulted in "tension in the members" and the creation of a "spring effect." (*Id.*). Steiner concluded that the Stand was properly designed, there was no failure to provide adequate instructions, but rather that Rosemarie O'Connor did not follow the instructions, and the Stand was "improperly assembled causing a spring effect." (*Id.*).

---

[6] The instructions describe the four vertical frame supports as the "legs" of the Stand; the first step in assembly is to open the folding stand and "have the 4 legs set on the floor." (Dkt. No. 66-6, p. 59). Two sets of cross-hatch "braces" connect the four frame supports and provide platforms for the top and bottom shelves. (*Id.*, pp. 58-60).

Pollack-Nelson and Dobson both responded in rebuttal to Steiner's report. Pollack-Nelson and Dobson pointed out that the assembly instructions do not explicitly call for alignment of the frame supports at 90 degrees. (Pollack-Nelson Rebuttal, 66-5, p. 25; Dobson Rebuttal, Dkt. No. 66-4, pp. 76-77).[7] Dobson also raised the issue of whether the Stand's shelves came with pre-drilled holes; since the pre-drilled holes would in theory align with the frame supports, their placement by the manufacturer would determine alignment, and "the failure of the frame supports to not be at 90 degrees is a manufacturing defect." (Dobson Rebuttal, p. 76). Rosemarie O'Connor testified that she believed the Stand came with pre-drilled holes in the shelves. (Rosemarie O'Connor Dep., pp. 42-43).

Steiner responded to their rebuttals by stating that Plaintiffs' expert witnesses "have both failed to consider the potential of improper assembly as a factor" in the accident. (Steiner Rebuttal, Dkt. No. 66-5, p. 43). In examining the Stand assembled by Rosemarie O'Connor, Steiner states that he observed a "14-degree angular misalignment[8] of the frame uprights relative to the pagoda," which resulted "from improper placement of the wood shelves in previous assembly steps prior to the forced assembly of the pagoda top onto the frame uprights." (*Id.*, p. 45). Steiner opined that in the Instructions, "[t]he frame cross-members that support the wood shelves appear at right angles [90 degrees] relative to each other." (*Id.*). Steiner found "no evidence of pre-drilled holes in any of the wood shelves," and pointed out that there is no mention of pre-drilled holes in the instructions. (*Id.*). Steiner concluded again that Rosemarie O'Connor and her husband improperly assembled the Stand and "introduced pre-tension into the frame, which caused the pagoda to abruptly detach." (*Id.*, p. 48).

---

[7] Figures 1-3 of the instructions do show cross-hatch connecting braces between the frame supports, but the angles between them are not marked by degrees. (Instructions, pp. 59-60).

[8] The misalignment of the Stand assembled by Rosemarie O'Connor is pictured in photographs annexed to the Steiner Rebuttal, Dkt. No. 66-5, p. 44, as well as the Bucinell Report, Dkt. No. 66-5, p. 57.

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248; *see also Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.,* 711 F.3d 253, 256 (2d Cir. 2013) (summary judgment appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim") (internal quotation marks omitted)).

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing a genuine issue for trial." *Anderson,* 477 U.S. at 248; *see also Celotex,* 477 U.S. at 323-24; *Wright v. Goord,* 554 F.3d 255, 266 (2d Cir. 2009). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary

judgment." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors Corp.,* 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines,* 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotation marks and citations omitted)).

When ruling on a summary judgment motion, "the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.,* 352 F.3d 775, 780 (2d Cir. 2003). Although federal law governs the procedural burdens at the summary judgment stage, New York State law applies to the substantive claims in this diversity action. *See Eliopoulos v. Nation's Title Ins.,* 912 F. Supp. 28, 30 (N.D.N.Y. 1996) (citing *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938)).

## IV. DISCUSSION

### A. The Indemnification Claim By Defendants

In their third-party complaint against Rosemarie O'Connor, the Defendants allege that the accident suffered by Bonnie O'Connor was "caused solely" by Rosemarie O'Connor's negligence (or in combination with Bonnie O'Connor and her husband) "in assembling and/or handling" the Stand. (Dkt. No. 26, ¶ 14). Defendants are seeking not only an apportionment of liability among the parties, but also "common law indemnification" from Rosemarie O'Connor. (*Id.*, ¶¶ 15-16).

Under New York law, the right to indemnification operates to shift liability from one party to another and arises from either an express or implied contract. *McDermott v. New York*, 50 N.Y.2d 211, 216 (N.Y. 1980). Absent an express contract, the general rule is that where

"payment by one person is compelled, which another should have made or which redounds solely to the benefit of another, a contract to reimburse or indemnify is implied by law." *Brown v. Rosenbaum*, 287 N.Y. 510, 518-519 (N.Y. 1942). Implied (common-law) indemnification "is a restitution concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of the other." *McCarthy v. Turner Constr., Inc.*, 953 N.E.2d 794, 798-99 (N.Y. 2011) (citing *McDermott*). In a "classic indemnification case," the party seeking common-law indemnification has "committed no wrong," but has been held liable or exposed to liability to the injured party "by virtue of some relationship with the tort-feasor or obligation imposed by law." *Glaser v. M. Fortunoff of Westbury Corp.*, 71 N.Y.2d 643, 646 (N.Y. 1988); *see also D'Ambrosio v City of New York*, 55 N.Y.2d 454, 461 (N.Y. 1982). Thus, common-law indemnification is typically only available to a party who is held liable solely by operation of law or vicarious liability. *McCarthy*, 953 N.E.2d at 798-99.

Ordinarily, to ultimately prevail on their indemnification claim and shift liability to Rosemarie O'Connor, Defendants would have to show 1) that they were free from wrongdoing; and 2) that the proposed indemnitor Rosemarie O'Connor "was guilty of some negligence that contributed to the causation of the accident." *See Aktas v. JMC Dev. Co.*, 877 F. Supp. 2d 1, 31 (N.D.N.Y. 2012) (citing *Perri v. Gilbert Johnson Enters., Ltd.*, 14 A.D.3d 681, 684-685, (2d Dep't 2005)). Ms. O'Connor argues that the indemnification claim fails as matter of law because the Defendants are only being sued "for their own acts of wrongdoing," and "[t]here are no allegations of vicarious liability" founded on acts by Rosemarie O'Connor. (O'Connor Br., pp. 12-13). She argues that Defendants cannot seek indemnification against her because they are only responsible for their own wrongdoing.

The Court agrees. "A party sued solely for its own alleged wrongdoing, rather than on a theory of vicarious liability, cannot assert a claim for common law indemnification." *Mathis v. Centr. Park Conservancy, Inc.*, 251 A.D.2d 171, 172 (1st Dep't 1998); *see also Trustees of Columbia Univ. v. Mitchell/Giurgola Assocs.*, 109 A.D.2d 449, 453-454 (1st Dep't 1985) (indemnification precluded where defendant's potential liability "would be based upon such defendant's own participation…as an actual wrongdoer," and defendant would be free from liability if it did no wrong); *Esteva v. Nash,* 2008 55 A.D.3d 474, 475 (1st Dep't 2008); *OneBeacon Am. Ins. Co. v. Comsec Ventures Int'l, Inc.*, No. 8:07-cv-900, 2010 U.S. Dist. LEXIS 1193, at *21, 2010 WL 114819, at *7 (N.D.N.Y. Jan. 7, 2010) (Because defendant was sued "for its own independent acts of negligence, and thus is liable only to the extent of its own fault, the principles of indemnification do not apply and its claim for indemnification cannot survive.").

The relevant claims against Defendants in the underlying action are for: 1) strict liability-product defect; 2) strict liability-failure to warn; 3) negligence; and 4) breach of warranty. (Dkt. No. 43, ¶¶ 32-61). These claims are premised on a theory of liability that the Stand was "defectively designed and/or manufactured and failed to carry sufficient warnings." (*Id.*, ¶ 31). There is no claim for vicarious liability which seeks to hold Defendants responsible for the actions of Rosemarie O'Connor. Plaintiffs' theory of liability is expressly limited to wrongdoing that occurred before purchase of the Stand. Accordingly, Defendants are only responsible for their own wrongdoing, to the extent there was any, in connection with the design, manufacture, distribution, and sale of the Stand. If Defendants committed no wrongdoing, and the sole cause of the accident was the alleged negligence of Rosemarie O'Connor, then Defendants face no liability, and indemnification would be unnecessary.

Defendants argue that "Plaintiff seeks to hold [them] vicariously liable for the negligence of Rosemarie O'Connor in assembling the Product and failing to properly follow the directions." (Defendants' Br., p. 28). However, that argument is at odds with any reasonable reading of the allegations in the Second Amended Complaint, which seeks to hold the Defendants responsible for wrongdoing in connection with the design, manufacture, distribution, and sale of the Stand. (Dkt. No. 43). While the complaint references the Defendants' duty to "design, manufacture, *assemble*, distribute and/or sell the Stand" in a condition safe to use, this obviously refers to assembly for distribution and sale. (*Id.*, ¶¶ 47, 48). There is no wrongdoing alleged regarding the assembly of the Stand after it was purchased from the Lowe's store; the complaint alleges that the Stand "was assembled pursuant to its written instructions," and "was not altered in any way prior to it being given to plaintiffs." (*Id.*, ¶ 19). Defendants cannot seek indemnification where the legal claims in the underlying action are clearly confined to their own wrongdoing. Therefore, the Court dismisses the claim for common law indemnification in the Third-Party Complaint.

### B. The Contribution Claim by Defendants

Defendants are not precluded, however, from seeking contribution from Rosemarie O'Connor as to liability in the underlying action. Unlike indemnification, contribution generally operates to apportion liability among tort-feasors, regardless of the underlying theory of liability. *McDermott*, 50 N.Y.2d at 216. "Where a party is held liable at least partially because of its own negligence, contribution against other culpable tort-feasors is the only available remedy." *Glaser*, 71 N.Y.2d at 646. "The right to contribution and apportionment of liability among alleged multiple wrongdoers arises when they each owe a duty to plaintiff or to each other and by breaching their respective duties they contribute to plaintiff's ultimate injuries. This is so

regardless of whether the parties are joint tort-feasors, or whether they are liable under different theories, so long as their wrongdoing contributes to the damage or injury involved." *Trustees of Columbia Univ.*, 109 A.D.2d at 454 (citing *Garrett v. Holiday Inns, Inc.*, 58 N.Y.2d 253 (N.Y. 1983), *Schauer v. Joyce*, 54 N.Y.2d 1 (N.Y. 1981)).[9]

To ultimately prevail on their contribution claim against Rosemarie O'Connor, Defendants would have to show that she owed a duty to Plaintiffs or to Defendants, and by breaching that duty she contributed to the accident. *Trustees of Columbia Univ.*, 109 A.D.2d at 454. To defeat a claim for contribution at the summary judgment stage, Rosemarie O'Connor must make a "*prima facie* showing that [she] was free from negligence in the happening of the accident.'" *Aktas,* 877 F. Supp. 2d at 31 (quoting *Weitz*, 65 A.D.3d at 681). There is no dispute that Rosemarie O'Connor owed at least some duty of care to Bonnie O'Connor in assembling the Stand. (O'Connor Br., pp. 14-15; Defendants' Br., pp. 12-13). Rosemarie O'Connor argues that Defendants' contribution claim must fail because there is no evidence that she was negligent in breaching any such duty. (O'Connor Br., pp 14-22).

Rosemarie O'Connor, however, has not made a *prima facie* case that she was free from negligence in the accident with the Stand. Even without deciding the admissibility of the proffered expert opinions,[10] based on the Stand instructions and the testimony of the parties, there are at minimum issues of fact as to: 1) the proper method of assembling the Stand;

---

[9] Defendants may assert a cause of action for contribution, even though there has not yet been any finding as to liability, since a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or *may be liable* to it for all or part of the claim against it." Fed. R. Civ. P. 14(a) (emphasis added). Thus, a defendant in a federal court substantively applying New York law may "implead a joint tortfeasor for contribution before the right to contribution accrues, because that third party "may be" liable to the defendant for a share of the plaintiff's primary judgment." *Andrulonis v. United States*, 26 F.3d 1224, 1233 (2d Cir. 1994). This contribution claim is contingent on a finding of liability in the underlying action. *See* 6 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 1451, at 475-479 (2010).

[10] Rosemarie O'Connor argues that Steiner's opinion that she improperly assembled the stand is inadmissible under Fed. R. Evid. 702 because "it is based on his own speculation about what the instructions 'imply' and otherwise not supported by the factual record." (O'Connor Br., p. 20).

13

2) whether Rosemarie O'Connor properly aligned the frame posts of the Stand; 3) whether the Stand's shelves came with pre-drilled holes which would ensure proper alignment; 4) whether Rosemarie and Robert O'Connor used improper force to put the pagoda top onto the Stand; and 5) whether the accident would have occurred even if the frame posts were aligned differently. These issues are vigorously disputed by the parties and their hired experts. The Stand instructions do not explicitly call for alignment of the frame posts at 90 degrees, but a jury may conclude that was implied. Nor do the Instructions explicitly call for any amount of force to bend or move the frame supports, as was admittedly used here. These issues will be for the trier of fact to decide in the underlying action, along with the issues of whether the Stand was defectively designed and/or manufactured, and failed to carry sufficient warnings. After seeing the Stand and its instructions and hearing from all of the witnesses, it will be up to the trier of fact to resolve these issues and determine what, if any, wrongdoing is attributable to Rosemarie O'Connor and/or the Defendants.

In sum, reviewing the record in the light most favorable to the non-movant, the Court concludes that there are material issues of fact as to the alleged negligence of Rosemarie O'Connor, which must be determined at trial in the underlying action. Rosemarie O'Connor's motion for summary judgment on the contribution claim is therefore denied.

### C. The Indemnification Claim by Rosemarie O'Connor

In her counterclaim, Rosemarie O'Connor seeks common law indemnification from Defendants "for any damages they seek in the Third-Party Complaint, as well as for attorney's fees, costs and disbursements in defending the Third-Party Action." (Dkt. No. 31, ¶ 50). Ms. O'Connor argues that she is entitled to summary judgment on her indemnification claim because she is free from wrongdoing and simply purchased the allegedly defective Stand "at the end of

the stream of commerce" and provided it to her sister-in-law. (O'Connor Br., pp. 22-23). Defendants oppose her request for summary judgment and seek dismissal of the counterclaim. (Defendants' Br., pp. 28-30).[11] Defendants argue that Rosemarie O'Connor is not entitled to common law indemnification from them. The Court agrees.

As discussed in Point IV(A) *supra*, common law indemnification is only available where a party is held liable or exposed to liability solely by operation of law or vicarious liability. *McCarthy*, 953 N.E.2d at 798-99. Neither situation is present here. Rosemarie O'Connor cannot be vicariously liable for the Defendants' alleged wrongdoing because she was not sued in the underlying action, and the allegations in the Second Amended Complaint are limited to the Defendants' actions in the design, manufacture, distribution, and sale of the Stand. (Dkt. No. 43, ¶¶ 31-61). Ms. O'Connor correctly points out that "a seller or distributor of a defective product has an implied right of indemnification as against the manufacturer of the product." (*See* O'Connor Br., pp. 22-23). But the cases cited by Ms. O'Connor all involve parties sued directly by injured plaintiffs for defective products who sought indemnification from the product manufacturers based on pure vicarious liability. *See, e.g., Lowe v. Dollar Tree Stores, Inc.*, 40 A.D.3d 264, 265 (1st Dep't 2007) (holding that Dollar Tree was entitled to summary judgment on its claim for common law indemnity from toy distributor in personal injury action arising from toy sold at a Dollar Tree store where there was no evidence Dollar Tree modified the toy). Ms. O'Connor does not face such vicarious liability for a defective product. Nor does she, as the

---

[11] Defendants did not make a separate cross-motion for summary judgment on Rosemarie O'Connor's counterclaim, but the issue is fully presented and appropriate for decision. *See RSL Communs., PLC v. Bildirici*, No. 04-cv-5217, 2010 U.S. Dist. LEXIS 22368, *16-17, 2010 WL 846551, at *5 (S.D.N.Y. Mar. 5, 2010) ("Although [plaintiff] made no formal motion for summary judgment, 'it is most desirable that the court cut through mere outworn procedural niceties and make the same decision as would have been made had [counter-claim] defendant made a cross-motion for summary judgment.'") (citing *Local 33, Int'l Hod Carriers Bldg. and Common Laborers' Union of Am. v. Mason Tenders Dist. Council of Greater N.Y.*, 291 F.2d 496, 505 (2d Cir. 1961)).

assembler of the Stand, have the same passive role in the stream of commerce, such as a store that simply sells a product, that supports vicarious liability.

Ms. O'Connor is not entitled to indemnification by operation of law either, since the only valid claim against her in the Third-Party Complaint is for contribution. As discussed in Point IV(A) *supra*, Defendants cannot seek indemnification from Ms. O'Connor because they are only potentially liable in the underlying action for their own wrongdoing. In the event the Defendants are found liable, they can seek contribution from Ms. O'Connor, and the trier of fact can decide and apportion her liability, if any, versus that of Defendants. If the trier of fact determined that she owed the Defendants contribution based on her own wrongdoing, that finding would preclude her from seeking indemnification, since "a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine." *Trustees of Columbia Univ.*, 109 A.D.2d at 453. Accordingly, Ms. O'Connor's indemnification claim fails as a matter of law.

## V. CONCLUSION

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Rosemarie O'Connor's motion for summary judgment (Dkt. No. 66) is **GRANTED** as to the Third-Party Plaintiffs' claim for common law indemnification and the claim for common law indemnification in the Third-Party Complaint (Dkt. No. 26) is dismissed; and it is further

**ORDERED** that Rosemarie O'Connor's motion for summary judgment (Dkt. No. 66) is **DENIED** as to the Third-Party Plaintiffs' claim for contribution; and it is further

**ORDERED** that Rosemarie O'Connor's motion for summary judgment (Dkt. No. 66) on the counterclaim in her Answer to the Third-Party Complaint (Dkt. No. 31) is **DENIED**; and it is further

**ORDERED** that Rosemarie O'Connor's counterclaim for common law indemnification in her Answer to the Third-Party Complaint (Dkt. No. 31) is dismissed, and it is further

**ORDERED** that the parties shall consult with each other and the Courtroom Deputy of this Court regarding a trial date and provide potential stipulated trial dates to the Courtroom Deputy by February 20, 2015; and it is further

**ORDERED** that all counsel shall be available for a telephone status conference to be initiated by the Court on February 20, 2015 at 2 p.m.; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED**.

February 6, 2015
Syracuse, New York

Brenda K. Sannes
U.S. District Judge